UNITED STATES DISTRICT COURT

DISTRICT OF COLORADO

---

JAVIER AGUIRRE,

    Petitioner,

v.

RACHEL TILLMAN,

    Respondent.

Case No.

---

**VERIFIED COMPLAINT AND PETITION FOR ISSUANCE
OF A SHOW CAUSE ORDER AND FOR RETURN OF
MINOR CHILDREN TO COLOMBIA**

---

NOW COMES PETITIONER, JAVIER AGUIRRE, by and through is attorneys, Masters Law Group, LLC, and as his Petition to the Court for Issuance of a Show Cause Order and Demand for Return of Minor Children to Colombia, alleges and shows to the Court as follows:

**I.    Introduction**

1.    Petitioner, Javier Aguirre ("Petitioner" or "Javier"), is a resident of Piedecuesta, Colombia (hereinafter, "Colombia") seeking the return of his two minor children, who were wrongfully retained in the United States of America from Colombia by the children's mother without the Petitioner's knowledge or consent on or about November 21, 2022.

2.    Petitioner brings this action pursuant to the Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 (T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98, reprinted in 51 Fed. Reg. 10494 (1986)) (hereinafter, the "Convention," a copy of which is attached hereto as Exhibit A). The Convention came into effect in the United States of America (hereinafter, "United States") on July 1, 1988, and was

ratified between the United States and Colombia. Article I of the Convention explains that its objectives are: "(a) to secure the prompt return of children wrongfully removed to or retained in any Contracting states; and (b) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States." Article II of the Convention provides that "[t]he judicial or administrative authorities shall act expeditiously in proceedings for the return of children."

3. The provisions of the Convention have been given the force and effect of law by the United States Congress through the passage of the *International Child Abduction Remedies Act, 42 U.S.C. § 11601 et seq.* (1995) (hereinafter "ICARA"). The ICARA was enacted for the specific purpose of "establish[ing] procedures for the implementation of the Convention in the United States." *42 U.S.C. § 11601(b)(l)*.

4. The Hague Convention authorizes a federal district court to determine the merits of a claim for the wrongful removal or retention of the children; it does not, however, allow the district court to consider the merits of the underlying custody dispute.

## II. Jurisdiction and Venue

5. Jurisdiction is conferred on this Court by *28 U.S.C. § 1331* and *42 U.S.C.§ 11603(a)*.

6. Venue is proper in the United States District Court for the District of Colorado, pursuant to *28 U.S.C. § 9003, 28 U.S.C. § 139l(d)* and *42 U.S.C. § 11603(b)*, because the Respondent and the children who are the subject of this Petition are located in Colorado Springs of El Paso County, Colorado, which is located in this District. Based upon information and belief, both the Respondent and children are located at 6980 Tobin Road, Colorado Springs, Colorado 80908.

**III.    Parties and Wrongfully Removed Children**

7.    Petitioner is a Colombian citizen living and working in Colombia full time as a Professor of Philosophy. Petitioner was born on March 10, 1983, in Colombia. Petitioner is both an "applicant" as defined in *42 U.S.C. § 11602(1)* and a "petitioner" as defined in *42 U.S.C. § 11602(4)*.

8.    The Respondent, Rachel Tillman, (hereinafter "Respondent"), is a citizen of the United States and Permanent Resident in Colombia. She is also a "respondent" within the meaning of 42 U.S.C. § 11602(6). On information and belief, Respondent is currently residing at a residence located in Colorado Springs, Colorado, in the United States of America.

9.    Petitioner and Respondent are the parents of two minor children, namely: (1) E.S.A.T., born in Piedecuesta, Colombia on August 6, 2015; and (2) O.A.A.T., born in Piedecuesta, Colombia on March 19, 2018 (See Redacted Birth Certificates attached hereto as Exhibit B). The children are both minors under the age of sixteen (16) who are thus subject to the terms of this Convention in accordance with Article 4 thereof.

10.    Petitioner and Respondent were married in North Carolina, United States, on May 6, 2016. (See Marriage Certificate attached hereto as Exhibit C).

11.    Shortly after marriage, on or around September 12, 2012, the parties made the decision to and did in fact move to Bucaramanga, Colombia to be closer to Petitioner's support system, for business opportunities, and to start their family.

12.    The parties' marriage is registered in Colombia.

13.    On or around October 15, 2014, Petitioner and Respondent moved from Bucaramanga, Colombia to Piedecuesta, Colombia.

14. The parties both established residences in Colombia and lived together with their minor children in a house built by Petitioner's parents from October of 2014, three years preceding the birth of the eldest child, to the time Respondent left Colombia with the minor children in November of 2022.

15. The parties hold the title to two Colombian properties located in Santa Barbara, Santander, Colombia.

16. There was no intent by the parties to remain in the United States of America, or return, as neither party ever submitted an application for residency for either of their minor children who are both Colombian citizens. In addition, both parties had business opportunities and jobs in Colombia, and had built their home there.

17. Both minor children were born in Colombia, with the eldest child born in August of 2015 and the second-born and youngest child born in March of 2018. Neither minor child has ever resided outside Colombia throughout the course of their lives up until the point Respondent unilaterally retained them in the United States.

18. Petitioner was present for the birth of both minor children and is listed as the father on both birth certificates. He has resided with the minor children in Colombia at their residence located in Piedecuesta, Colombia since they were born.

19. In January 2022, Respondent informed Petitioner that she felt her sexual orientation was homosexual and begin the process of individual therapy. Respondent confirmed these feelings in June 2022, at which point the parties decided to separate and initiate divorce proceedings.

20. In July 2022, Respondent accepted and started a full-time position at the Education Department of the Universidad Cooperative de Colombia (UCC), where she is still represented as an employee on the school's website.

21. Petitioner has maintained employment in Colombia since the parties moved there in 2012, and does not have any work located in or connected to the United States.

22. In or around November of 2022, the parties entered into formal mediation at the Chamber of Commerce of Bucaramanga to reach an agreement on financial aspects of their divorce proceedings.

23. During one of the two mediation sessions, on November 10, 2022, the parties agreed that Petitioner would provide permission to Respondent to temporarily leave the country with the minor children for purposes of visiting Respondent's family for the American Thanksgiving holiday. This was decided with the intent of mediation dialogue resuming on December 15, 2022 in Colombia upon Respondent and the minor children's return from the United States which was scheduled for December 5, 2022. The permit signed by Petitioner in relation to this trip granted permission for Respondent to travel with the minor children for the time period of November 21, 2022, to December 5, 2022.

24. Respondent provided the trip itinerary to Petitioner which included Respondent and the minor children's return flight to Colombia scheduled for December 5, 2022.

25. On or around November 30, 2022, Respondent informed Petitioner that she needed to change her passport to have six months of validity before returning to Colombia which would take between one to four weeks.

26. During this time, Respondent made no indication that she would remain in the United States and repeatedly expressed her intent to return with the minor children to Colombia throughout the month of December.

27. On or around December 6, 2022, Petitioner asked Respondent if he should enroll the children in school for the 2023 school year. Respondent confirmed that he should enroll the minor children and Petitioner proceeded to make the necessary payments for enrollment.

28. On or around December 22, 2022, Respondent expressed that the children would be back for Christmas when Petitioner offered to purchase their return flights and send them Christmas presents.

29. Petitioner and Respondent kept in consistent communication during the month of December regarding the minor children and Respondent's plans to return to Colombia until December 30, 2022, at which point Respondent informed Petitioner via email that she would not be returning to Colombia and would not allow the children to return either. In this email she expressed that she was forbidding Petitioner from seeing the minor children.

30. On January 31, 2023, Petitioner submitted a request for the international return of minors to the Instituto Colomiano de Bienestar Familiar (Colombian Family Welfare Institute), in favor of his children.

31. Petitioner saw the minor children on a daily basis from the time they were born in Colombia until the Respondent unilaterally chose to retain the minor children in the United States.

**IV.    Respondent's Violation of the Convention and ICARA**

32.    At the time Respondent wrongfully removed the minor children from Colombia and retained the children in the United States of America, the minor children's habitual residence, within the meaning of Article 3 of the Convention, was Piedecuesta, Colombia. The Petitioner did not consent or subsequently acquiesce to the minor children remaining in the United States.

33.    The term "habitual residence" is undefined by the Convention. *Koch v. Koch*, 450 F.3d 703, 708 (7th Cir. 2006). The determination of habitual residence "is a fact-specific inquiry that should be made on a case-by-case basis. Moreover, . . . a parent cannot create a new habitual residence by wrongfully removing and sequestering a child." *Miller v. Miller*, 240 F.3d 392, 400 (4th Cir. 2001). The analysis "focuse[s] on the parents' last shared intent in determining habitual residence" *Koch*, 450 F.3d at 715.

34.    In the present case, the below non-exhaustive actions of the parties clearly demonstrate that Colombia, not the United States of America, is the habitual residence of the child:

    a.    The minor children are citizens of Colombia.

    b.    The Petitioner is a citizen Colombia.

    c.    Petitioner is a full-time professor at the Department of Philosophy of Universidad Industrial of Santander.

    d.    The Respondent is a citizen of the United States and permanent resident in Colombia.

    e.    Petitioner and Respondent resided together in Colombia since 2012, prior to the birth of either minor child.

f.  The minor children resided in Colombia since their respective births in 2015 and 2018.

g.  The minor children lived continuously in Colombia from the time they were born until they were wrongfully retained in the United States.

h.  The parties both established residences in Colombia and lived together with the minor children in a house built by Petitioner's parents from October of 2014 to the time Respondent wrongfully retained the minor children in the United States.

i.  In July of 2022, Respondent began a full-time position in Colombia at the Education Department of the Universidad Cooperative de Colombia (UCC). Prior to accepting this position, Respondent worked as an ad hoc professor at the Universidad Industrial Santander, was co-owner of an eco-friendly store called El Anaquel Verde, and presented herself as the owner and creator of Botica Flor De Luna. Each of these positions and businesses were located in Colombia.

j.  All of the minor children's doctors and medical professionals are located in Colombia.

k.  All of the minor children's schooling took place in Colombia and associated education records are located in Colombia.

l.  All of the minor children's friends and the majority of their family are located in Colombia.

m.  The minor children participated in all of the cultural customs and traditions in Colombia.

n.  At no time did the parties make plans for the minor children to move to the United States.

    o.   The parties and their minor children have healthcare coverage in Colombia.

    p.   The minor children received regular healthcare in Colombia.

35.    Because the minor children's habitual residence at the time they were wrongfully removed to the United States was Colombia, Petitioner's custodial rights are defined by Colombian law. *Convention Art. 3(a)*.

36.    Petitioner has custodial rights pursuant to Colombian law, which made the children's removal and retention in the United States contrary to Petitioner's custodial rights.

37.    Because Respondent's retainment of the minor children in the United States and removal from their habitual residence in Colombia violated Petitioner's custodial rights, the removal and retainment was wrongful within the meaning of Article 3 of the Convention and in violation of Petitioner's rights under the Convention and the *ICARA*, *42 U.S.C. § 11601, et seq*.

38.    Because Respondent's retainment in the United States and removal of the children from his habitual residence was wrongful, the Convention and the *ICARA* authorize this Court to order the return of the children forthwith. *Convention, Art. 3; 42 U.S.C. § 11603*.

39.    *42 U.S.C. § 11604(b)* conditions this Court's authority to order a child removed from a person having physical control of the child on the satisfaction of applicable requirements of state law.

40.    ICARA also authorizes this Court, "[i]n furtherance of the objectives of ... the Convention ... [to] take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the further removal or concealment before the final disposition of the petition." *42 U.S. C. § 11604*. Under Section 210(a) of the UCCJEA, "[t]he court may order any party to the proceeding who is in this State

or over whom the court has personal jurisdiction to appear personally before the court. If that party has physical custody of the child[ren], the court may order that [s]he appear personally with the child…. ".

41. The purpose of the Convention is to determine which country is most appropriate to have jurisdiction, not to determine the best parent or to determine the best interest of the children. "The Convention is based on the principle that the best interests of the child are well served when decisions regarding custody rights are made in the country of habitual residence." *Abbott v. Abbott*, 560 U.S. 1, 20, 130 S. Ct. 1983, 1995 (2010). "The entire purpose of the Convention is to deter parents from absconding with their children and crossing international borders in the hopes of obtaining a favorable custody determination in a friendlier jurisdiction." *Walker v. Walker*, 701 F.3d 1110, 1116 (7th Cir. 2012).

42. A Complaint under the Convention may be treated as an application for a Writ of Habeas Corpus under *28 U.S.C. §2241, et seq.*, pursuant to which this Court may issue an order directing Respondent to show cause on an expedited basis why the children should not be returned immediately to the jurisdiction of his habitual residence in Colombia. *See Zajaczkowski v. Zajaczkowski*, 932 F. Supp. 128, 132 (D. Md. 1996) ("[T]he Court will treat the [Convention] petition as an application for a writ of habeas corpus ... pursuant to 28 U.S.C.A. § 2243"); *see also Miller v Miller*, 240 F.3d 392, 397- 98 (4th Cir. 2001); *In re: McCullough*, 4 F. Supp. 2d 411 (W. D. Penn., 1998); Convention, Art. 11 (Establishing six-week target time frame for resolution of petitions under the Convention).

43. The Petition was filed less than one (1) year from the time that the Respondent wrongfully retained the children in the United States of America.

44. Petitioner has incurred, and will continue to incur, various necessary expenses, including court costs, legal fees, transportation and other costs relating to the return of the children. Petitioner respectfully requests that this Court award him all fees and costs, including transportation costs and attorney's fees, incurred as required by *28 U.S.C. § 9007*.

45. Pursuant to *28 U.S.C. § 9004* and the *Hague Convention, Article 16*, Petitioner requests that this Court issue an immediate order restraining Respondent from removing the children from the jurisdiction of this Court, directing any United States Marshall or other law enforcement officer to bring the children before this Court. Petitioner also asks this Court to schedule an expedited hearing on the merits of the Petition.

46. Pursuant to *28 U.S.C. § 9003(c)*, Respondent shall be given notice of these proceedings in accordance with the laws governing notice to interstate child custody proceedings.

**WHEREFORE**, Petitioner respectfully requests that this Court enter orders granting him the following relief:

A. A Preliminary Show Cause Order:

1. Commanding the Respondent (with or without the minor child) to appear in this Court to show cause why the minor children have been kept from their father and why the minor children should not be returned to Colombia forthwith including the scheduling of an expedited preliminary hearing on the merits of the Complaint, an Order that Respondent show cause at this hearing why the children should not be returned to Colombia and, pursuant to Federal Rule of Civil Procedure 64, an Order that the trial of the action on the merits be advanced and consolidated with the hearing on the verified complaint;

    2.      Requiring Respondent to surrender to this Court any passports, residency and travel documents in her name, Petitioner's name, and/or in the name of the minor children;

    3.      Prohibiting the children's removal from the jurisdiction of this Court, pending final determination of the Petition;

    4.      Providing that if Respondent fails to appear pursuant to this Court's Show Cause Order, this Court will issue an Order directing that the names of the minor children be entered into the national police computer system (N.C.I.C.) missing persons section and that an arrest warrant will be issued for Respondent; and

B. A Final Order:

    1.      An Order declaring and adjudicating that Respondent's removal/retention of the children in the United States was wrongful under Article 3 of the Convention;

    2.      An Order compelling the return of the children to their habitual residence in Colombia;

    3.      An Order requiring Respondent to pay the necessary expenses incurred by Petitioner in connection with these proceedings, pursuant to *22 U.S.C. § 9007*, such expenses and costs to be resolved via post-judgment motion; and

    4.      Granting such other and further relief as this Court deems just and proper.

Dated this 19th Day of July 2023

/s/ Anthony G. Joseph

MASTERS LAW GROUP LLC
Anthony G. Joseph, Esq.
Erin E. Masters, Esq.
30 N. LaSalle Street, Suite 2250
Chicago, Illinois 60602
Phone : (312) 609-1700
Facsimile : (312) 893-2002
ajoseph@masters-lawgroup.com

## **VERIFICATION**

Under penalties of perjury, the undersigned hereby certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information, and belief, such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

This 24th day of July 2023

/s/ Javier Aguirre_____<br>Javier Aguirre

# EXHIBIT LIST

**Exhibit A**:   The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 (T.I.A.S. No. 11, 670 at 1, 22514 U.N.T.S. at 98, reprinted in 51 Fed Reg. 10494 (1986)

**Exhibit B**:   Redacted Birth Certificate of E.S.A.T. and O.A.A.T.

**Exhibit C**:   Marriage certificate of Javier Aguirre and Rachel Tillman.